FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT - 5 2005

JAMES R. LARSEN, CLERK
_____ DEPUTY
YAKIMA, WASHINGTON

1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                    EASTERN DISTRICT OF WASHINGTON
8
9   KELLY R KNEIFEL,                  )
                                      )    NO.  CV-04-00310-AAM
10            Plaintiff,              )
                                      )
    v.                                )
11                                    )    ORDER **GRANTING** DEFENDANT'S MOTION
    JO ANNE B BARNHART,              )    FOR SUMMARY JUDGMENT, *INTER ALIA*
12  Commissioner of Social           )
    Security,                         )
13                                    )
              Defendant.             )
14
15       BEFORE THE COURT are cross motions for Summary Judgment.  (Ct.
16  Rec. 13, 17).   Attorney Maureen Rosette represents the Plaintiff;
17  Assistant United States Attorney Pamela Derusha and Special Assistant
18  United States Attorney Franco L. Becia represent the Defendant.  After
19  reviewing the administrative record and briefs filed by the parties,
20  the court **DENIES** Plaintiff's motion for summary judgment and **GRANTS**
21  Defendant's motion for summary judgment.
22                    **I.    JURISDICTION**
23       Kelly R. Kneifel (Plaintiff) filed for Disability Insurance
24  benefits and Supplemental Security Income on October 2 and October 23,
25  2001.  (Tr. 64-66; 364-67).  She alleged a disability of depression,
26  with an onset date of January 31, 2000. (Tr. 64, 80, 393).  Her
27  application was denied initially and upon reconsideration.  (Tr. 34,
28

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT,** *INTER ALIA* -1-

40).  She timely requested a hearing before an administrative law
judge (ALJ).  (Tr. 43).  The hearing took place on March 18, 2003,
before ALJ Mary Bennett Reed.  (Tr. 389-449).  ALJ Reed denied
Plaintiff's claims for benefits on October 21, 2003.  (Tr. 16-30).
The Appeals Council denied review, making the ALJ's decision the final
decision of the Commissioner.  (Tr. 7).  The instant matter is before
the district court pursuant to 42 U.S.C. § 405(g).

## II.  SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to
engage in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for a
continuous period of not less than twelve months."  42 U.S.C. §§
423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant
shall be determined to be under a disability only if her impairments
are of such severity that the claimant is not only unable to do her
previous work but cannot, considering claimant's age, education and
work experiences, engage in any other substantial gainful work which
exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A),
1382c(a)(3)(B).  The Commissioner has established a five-step
sequential evaluation process for determining whether a person is
disabled.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S.
137, 140-42 (1987):

Step 1:  Is the claimant engaged in substantial gainful
activities?  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If she
is, benefits are denied.  If she is not, the decision maker proceeds
to step two.

Step 2:  Does the claimant have a medically severe impairment or
combination of impairments?  20 C.F.R. §§ 404.1520(a)(4)(ii),

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT,** *INTER ALIA* -2-

416.920(a)(4)(ii)).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step.

Step 3:  Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4:  Does the impairment prevent the claimant from performing work she has performed in the past?  20 C.F.R. §§404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's residual functional capacity assessment is considered.  If the claimant is able to perform her previous work, she is not disabled.  If the claimant cannot perform her previous work, then the evaluation proceeds to the fifth and final step.

Step 5:  Is the claimant able to perform other work in the national economy in view of her age, education, work experience and residual functional capacity?  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### III.   STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) the court set out the standard of review:

A district court's order upholding the Commissioner's

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* -3-

denial of benefits is reviewed de novo. *Harman v. Apfel*, 211
F.3d 1172, 1174 (9th Cir. 2000). The decision of the
Commissioner may be reversed only if it is not supported by
substantial evidence or if it is based on legal error.
*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
Substantial evidence is defined as being more than a mere
scintilla, but less than a preponderance. *Id.* at 1098. Put
another way, substantial evidence is such relevant evidence
as a reasonable mind might accept as adequate to support a
conclusion. *Richardson v. Perales*, 402 U.S. 389, 401
(1971). If the evidence is susceptible to more than one
rational interpretation, the court may not substitute its
judgment for that of the Commissioner. *Tackett*, 180 F.3d at
1097; *Morgan v. Commissioner of Social. Sec. Admin.*, 169
F.3d 595, 599 (9th Cir. 1999).

   The ALJ is responsible for determining credibility,
resolving conflicts in medical testimony, and resolving
ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
Cir. 1995). The ALJ's determinations of law are reviewed *de
novo*, although deference is owed to a reasonable
construction of the applicable statutes. *McNatt v. Apfel*,
201 F.3d 1084, 1087 (9th Cir. 2000).

## IV.    STATEMENT OF THE CASE

Plaintiff was 45 years old at the time of the hearing. She had

finished 11th grade and completed her GED. (Tr. 417). She was single

and has one adult son. *Id.* She was a heroin addict for 20 years,

using one to two grams per day. (Tr. 393). When she did not have a

job, she supported her habit by selling heroin. (Tr. 394). She

testified her last use was the end of June 2000. (Tr. 393). At the

time of the hearing, she was in her third year of methadone treatment.

(Tr. 423). She was also taking Zoloft for depression and Trazadone

for sleep problems. (Tr. 335).

Plaintiff has worked as a customer service representative, a

legal secretary, a secretary and cashier. (Tr. 97). She was a live-

in caretaker for her grandmother for almost three years until her

grandmother's death in April 2001. (Tr. 97, 419-20).

In October 2002, Plaintiff was hit by a truck while riding her

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT,** *INTER ALIA* -4-

1 | bicycle and sustained serious injuries to her right leg and left knee
2 | that required surgery. (Tr. 428-29). She testified that since the
3 | accident she cannot walk the block from her house to the bus stop.
4 | (Tr. 430). At the time of the hearing, her boyfriend was providing
5 | her transportation. (Tr. 436). Regarding her daily activities,
6 | Plaintiff testified she was attending classes at Spokane Community
7 | College three hours per day, that she could study only for a half hour
8 | at a time before she had to stop and take a nap. She stated she slept
9 | "all the time." (Tr. 426-28). She testified her boyfriend did most
10 | of the housework and chores. (Tr. 437).

11 | Medical expert Allen Bostwick, Ph. D., and vocational expert
12 | Deborah Lapoint also testified. (Tr. 390).

13 | ### V.  ADMINISTRATIVE DECISION

14 | At step one, ALJ Reed found Plaintiff was a heroin addict until
15 | she went into treatment in June 2000. (Tr. 17). She found
16 | Plaintiff's drug dealing to support her habit until mid-June 2000
17 | constituted substantial gainful activity (Tr. 17); therefore,
18 | Plaintiff did not satisfy the first step of the sequential evaluation
19 | process before June 2000. (Tr. 23). She found Plaintiff's work-
20 | related activities in caring for her grandmother did not constitute
21 | substantial gainful activity, but did indicate an ability to work.
22 | (Tr. 18).

23 | At step two, adopting the opinions of Dr. Bostwick, the ALJ found
24 | Plaintiff's heroin addiction, which caused "moderate" and "marked"
25 | restrictions in Plaintiff's ability to work, met the requirements of
26 | the Listings until she became abstinent in June 2000. (Tr. 23).
27 | Citing Public Law 104-121, the ALJ determined Plaintiff's heroin
28 |

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT,** *INTER ALIA* -5-

1    addiction was material to a determination of disability up to that

2    time; further, because Plaintiff was engaged in substantial gainful

3    activity until June 2000, she was ineligible for Social Security

4    benefits.   (Tr. 23).

5         The ALJ found that after Plaintiff entered treatment and stopped

6    using heroin, Plaintiff had "severe" impairments due to limitations

7    from her bicycle accident and dysthymia; however, these impairments

8    did not meet or equal the Listings.   (Tr. 23).   She found that

9    following substance abuse treatment, Plaintiff's dysthymia caused only

10   mild limitations.   *Id*.   At step four, the ALJ found that before

11   Plaintiff's bicycle accident in October 2002, she retained the

12   residual functional capacity for the full range of physical exertion,

13   but was limited to jobs where her attention and concentration would be

14   allowed to lapse intermittently.   (Tr. 29).   As such, she retained the

15   ability to perform her past relevant work as a general clerk and

16   cashier.   *Id*.   The ALJ found Plaintiff's subjective complaints about

17   her functional limitations, especially before her accident, were not

18   entirely credible.   (Tr. 24).

19        The ALJ determined that after October 2002, Plaintiff was unable

20   to perform any of her past relevant work and had the residual

21   functional capacity to perform a limited range of light/sedentary work

22   with the above-noted mental limitations. (Tr. 29).   She was limited to

23   lifting and carrying no more than 20 pounds occasionally and 10 pounds

24   frequently; standing and walking no more than 15-20 minutes at a time

25   for no more than one hour of an eight hour day; no more than seldom

26   pushing/pulling with her lower extremities; no work environment with

27   exposure to hazardous machinery or unprotected heights, no extremes in

28

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, *INTER ALIA* -6-**

1  temperature or humidity; never climbing, kneeling, crouching,

2  crawling, stooping, and no more than occasional balancing.

3  (Tr. 25-26).

4      Using the Grids as a framework and considering Ms. Lapoint's

5  testimony, the ALJ found Plaintiff had transferrable skills and could

6  perform a significant range of sedentary work, such as call out

7  operator, general clerk, clerk typist, insurance clerk and circulation

8  clerk.  (Tr. 27-28).  Accordingly, she found Plaintiff "not disabled"

9  as defined in the Social Security Act.

10                          **VI.  ISSUES**

11      The question presented is whether the ALJ's decision is supported

12  by substantial evidence and is free of legal error.  Plaintiff argues

13  that the ALJ erred when she: (1) improperly evaluated the medical

14  evidence in determining the severity of her mental impairment; (2)

15  relied on the testimony of a non-examining medical expert; and (3)

16  improperly rejected the opinions of her examining psychologists.  (Ct.

17  Rec. 14, p. 10-12).  Plaintiff further contends the post-hearing

18  evaluation by Dennis Pollack, Ph.D., should be considered in the

19  court's review. She argues that the new evidence constitutes a basis

20  for reversal of the ALJ's decision.  (Ct. Rec. 14, p. 14).

21                        **VII.  DISCUSSION**

22  A.  Evaluation of Medical Evidence

23      In a disability proceeding, a treating or examining physician's

24  opinion is given more weight than that of a reviewing or non-examining

25  physician.  *Benecke v. Barnhart,* 379 F.3d 587, 592  (9th Cir. 2004);

26  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (*quoting*

27  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998));  *Lester   v.*

28

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT,** *INTER ALIA* -7-

1  *Chater*, 81 F.3d 821, 830 (9th Cir. 1996);  *Smolen v. Chater,* 80 F.3d

2  1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human*

3  *Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d

4  597, 604-05 (9th Cir. 1989).  If an examining physician's opinions are

5  not contradicted, they can be rejected only with "clear and

6  convincing" reasons.  *Lester,* 81 F.3d at 830. If contradicted, the ALJ

7  may reject the opinion if specific, legitimate reasons that are

8  supported by substantial evidence are given.  *See Flaten*, 44 F.3d at

9  1463; *Fair*, 885 F.2d at 605.  To meet this burden, the ALJ can set out

10 a detailed and thorough summary of the facts and conflicting clinical

11 evidence, state his or her interpretation of the evidence, and make

12 findings.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002),

13 *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

14     Here, the ALJ set forth a detailed summary of Plaintiff's medical

15 treatment from the time she entered substance abuse treatment.  (Tr.

16 18-23).  Her summary is supported by the record.

17     A heroin addict for more then 20 years, Plaintiff entered

18 drug/alcohol treatment at Olalla Recovery Center on June 15, 2000,

19 where she successfully completed a 21 day program.  (Tr. 267).  She

20 participated in the recommended outpatient program until September

21 2000, when she was discharged for non-compliance after testing

22 positive for opiates.  (Tr. 274).  In October 2000, the Division of

23 Vocational Rehabilitation (DVR) referred Plaintiff to John McRae,

24 Ph.D, for a psychological assessment and diagnostic report. (Tr. 136).

25 Dr. McRae conducted a mental status exam, a Beck Depression Inventory

26 and Anxiety Inventory, a Wechsler Abbreviated Intelligence Scale WAIS)

27 and memory scale (WMS-III), and a Minnesota Multi-phasic Personality

28
**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT,** *INTER ALIA* -8-

Inventory (MMPI), the results of which were determined valid.  (Tr. 137-39).  He concluded Plaintiff suffered from recurrent major depression without psychotic features, opoid dependency in early full remission, and a personality disorder, nos.  (Tr. 139).  He gave her a Global Assessment of Functioning (GAF) score of 50 for the past year and a current score of 45.[1]  Dr. McRae opined that in her present state, she could not maintain work tasks, but her depression could be treated with anti-depressants effectively. He estimated she would be in a more functional state within three to six months.  (Tr. 140).  He opined her mental abilities and learning abilities were adequate, and she could profit from education, training or employment.  *Id.*  In the evaluation form, Dr. McRae indicated a "marked" degree of severity for the following symptoms: depressed mood, social withdrawal, motor retardation, and global illness.  (Tr. 142).  He indicated "severe" limitations in her ability to perform routine tasks and "marked" limitations in her ability to respond appropriately to and tolerate pressures of a normal work setting.  (Tr. 143).

On March 16, 2001, mental health professional Darcie Smiley,

---

[1] The GAF scale is a common tool for tracking and evaluating the overall psychological functioning of a patient.  A score of 41-50 indicates "severe symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)."  A score of 51-60  indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  A score of 61-70 indicates "some mild symptoms, (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)*, at 32 (1995).

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT,** *INTER ALIA* **-9-**

1   M.S., completed a psychological/psychiatric evaluation form.[2]   (Tr.

2   145-48).   She assessed "marked" limitations in Plaintiff's ability to

3   (1) relate appropriately to co-workers and supervisors; (2) interact

4   appropriately with the public; and (3) tolerate the pressures and

5   expectations of a normal work setting (social factors).   (Tr. 147).

6   As noted by the ALJ, Ms. Smiley[3] referred to objective test results,

7   but supporting documentation is not in the record.   (Tr. 19-20).

8       Plaintiff was referred to Dr. Rosekrans to evaluate her need for

9   continued financial assistance.   (Tr. 149, 178).   Dr. Rosekrans

10   completed a psychological evaluation on September 12, 2001, apparently

11   based on Plaintiff's self-report.   (Tr. 149-50).   He concluded she was

12   suffering from an adjustment disorder due to her divorce, drug

13   withdrawal and abstinence.   (Tr. 150).   He reported her conversation

14   was normal, she was pleasant, cooperative and able to do her

15   activities of daily living.   (Tr. 149).   He opined it would take her

16   another six months before trying to do full-time work.   *Id.*   Dr.

17   Rosekrans diagnosed Plaintiff with adjustment disorder with mixed

18   anxiety and depressed mood and opiod dependence, sustained full

19   remission.   He assessed "marked" limitations in her ability to relate

20   appropriately to co-workers, supervisors, and to the public, and in

21

22       [2]   The opinions of Ms. Smiley, who is not an acceptable medical
    source, are to be considered by the ALJ to the extent they assess the
23   effects of an impairment on a claimant's ability to work. 20 C.F.R. §§
    404.1513(a), (d)(1).   Her opinions regarding diagnoses are not
24   considered those of an acceptable medical source and are, thus, given
    less weight than that of examining and non-examining physicians.   *See*
25   *Gomez v. Chater,* 74 F.3d 967, 970-71 (9th Cir. 1996).

26       [3] The court observes the ALJ inadvertently referred to Ms. Smiley
27   here as Ms. "Smith."   (Tr. 19).   It is clear from the entire record
    that the medical provider being discussed was Darcie Smiley.

28
    **ORDER GRANTING DEFENDANT'S MOTION
    FOR SUMMARY JUDGMENT,** *INTER ALIA*-10-

her ability tolerate the pressures and expectations of a normal work setting. (Tr. 153). The record does not include clinical notes or test results from Dr. Rosekrans.

At the hearing, Dr. Bostwick testified that Plaintiff's cognitive abilities were well within the normal limits, even when tested shortly after her withdrawal from heroin. (Tr. 400, 405). This is consistent with the results of Dr. McRae's objective testing in October 2000. (Tr. 138-39). Dr. Bostwick also noted Plaintiff exhibited antisocial behavior when she was using drugs, i.e. embezzling from her employer, which could be the basis for Dr. McRae's finding of a personality disorder. Dr. Bostwick noted that this diagnosis was isolated and without specifics. (Tr. 402). He opined her depression initially was more severe, but did not persist for 12 months. He also noted no history of mental health treatment other than medication. (Tr. 400). He based his opinions on a longitudinal review of the entire record, including counseling notes from Ramona Sherman, ARNP. (Tr. 23; 399). Dr. Bostwick concluded Plaintiff's diagnosis at the time of the hearing was depressive disorder that did not meet the criteria of a severe mental impairment. (Tr. 402). He testified that Plaintiff's dysthymia was controlled with medication. The ALJ adopted his finding that during times of situational exacerbation, Plaintiff was subject to moderate limitations in "maintaining attention and concentration for extended periods of up to no more than ten per cent of the time." (Tr. 22, 410). He found that none of the limitations noted in the record met the "12 month durational period of the Act." (Tr. 411).

Plaintiff argues that the ALJ did not properly reject the opinions of her examining psychologists when she relied upon Dr.

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, *INTER ALIA*-11-**

1 Bostwick's testimony.  (Ct. Rec. 14, p. 12).  The ALJ is responsible

2 for resolving conflicts and ambiguities in the evidence.  *Sample v.*

3 *Schweiker*, 694 F. 2d 639, 642 (9th Cir. 1982).  The analysis and

4 opinion of an expert selected by an ALJ may be helpful in her

5 adjudication and resolution of conflicting medical testimony.

6 *Andrews,* 53 F.3d at 1041, *citing Magallanes,* 881 F.2d at 753.  Courts

7 have upheld an ALJ's decision to reject the opinion of an examining

8 physician based, in part, on the testimony of a non-examining medical

9 advisor. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir.

10 2001); *Lester*, 81 F.3d at 831.  Testimony of a medical expert may

11 serve as substantial evidence when supported by other evidence in the

12 record.  *Magallanes,* 881 F.2d at 752.  A reviewing court may not

13 second guess the ALJ if the evidence rationally supports his or her

14 determination.  *Andrews*, 53 F.3d at 1039-40.  If supported by

15 substantial evidence, the ALJ's decision must be upheld, even where

16 the evidence is susceptible to more than one rational interpretation.

17 *Id.*

18     In her evaluation of the medical evidence, the ALJ should set

19 forth specific reasons for the weight given to all acceptable medical

20 source opinions.  *Id.* at 1042.  If the ALJ rejects a contradicted

21 medical opinion, she must give specific, legitimate reasons for doing

22 so.  However, the court does not require a "special incantation" in

23 the rejection of medical opinions. Rather, the reviewing court may

24 draw specific and legitimate inferences from the ALJ's summary of the

25 evidence, interpretation and findings, as long as they are supported

26 by substantial evidence in the record.  *Magallanes*, 881 F.2d at 755.

27 Historically, courts have recognized internal inconsistencies,

28

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT,** *INTER ALIA*-12-

1  conflicting medical evidence, the absence of regular medical treatment
2  during the alleged period of disability, and the lack of medical
3  support for doctors' reports based substantially on a claimant's
4  subjective complaints as specific, legitimate reasons for disregarding
5  an examining physician's opinion.  *Thomas,* 278 F. 3d at 957; *see also*
6  *Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 605.  Further, the more
7  consistent an opinion is with the record as a whole, the more weight
8  is given to that opinion.  20 C.F.R. §404.1527(d)(4).  The ALJ does
9  not need to accept the opinion of any medical source if it is
10 conclusory, brief or unsupported by findings.  *Matney on Behalf of*
11 *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

12      As summarized and interpreted by the ALJ, the medical evidence
13 reveals specific and legitimate inferences that support the ALJ's
14 rejection of the findings of Dr. McRae, Dr. Rosekrans and Ms. Smiley
15 that Plaintiff had severe social limitations.  (Tr. 21-22, 24, 26).
16 Most notably, the treatment notes from Nurse Sherman show Plaintiff's
17 depression improved significantly with medication, that Plaintiff
18 participated in volunteer activities, and denied fatigue, mood swings
19 or problems with attention or concentration.  (Tr. 21-22, 166, 186,
20 229, 235).  Plaintiff reported positive experiences with friends and
21 school.  (Tr. 170,  238, 241). She was able to live independently,
22 attend group meetings and perform her daily activities without
23 significant problems.  (Tr. 229-30).  Nurse Sherman's observations
24 over the years and her contemporaneous notes support Dr. Bostwick's
25 opinions that any depression was situational and did not meet the
26 durational requirement.
27      The ALJ also made specific findings rejecting the medical
28

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, *INTER ALIA*-13-**

1   opinions at issue.  She found "no supporting documentation or

2   objective testing to support the assessment of severe social

3   limitations." (Tr. 26).  She determined that the severe social

4   limitations findings were not consistent with the record as a whole,

5   were not consistent with Dr. McRae's opinion that Plaintiff's

6   condition would be resolved in three to six months, and were based on

7   unreliable self-report.  *Id.*  The ALJ stated that Plaintiff's contact

8   with other medical providers did not indicate "significant social

9   interaction difficulties and treatment notes indicate that she had

10  friends, was volunteering, going to school, and attending a variety of

11  group meetings."  *Id.*  These are legitimate reasons for rejecting a

12  medical opinion, and are supported by substantial evidence in the

13  record.  *See Thomas*, 278 F.3d at 957.

14      Plaintiff argues that the record shows that, contrary to the

15  ALJ's finding, Dr. McRae conducted many objective tests, and

16  therefore, the ALJ's rejection of Dr. McRae's opinion was legal error.

17  (Ct. Rec. 14, p. 13).  This argument is without merit.  Although Dr.

18  McRae administered objective tests, the test results do not reveal a

19  basis for the conclusion that Plaintiff had severe limitations in the

20  designated social factors.  There are no clinical notes from Dr. McRae

21  to support a finding of "marked" or "severe" social limitations.

22  Further, the form entries regarding social factors are conclusory and

23  internally inconsistent.[4] (Tr. 143).  As Dr. McRae stated in his

24  ────────────────────

25      [4]   The court notes that there are conflicting degrees of
        limitation checked for several of the categories under Social Factors
26      and a notation, "could deal [with] stress or use judgment."   (Tr.
        143).  These inconsistencies necessarily detract from the weight given
27      to the evidence.  20 C.F.R.  § 404. 1527(c)(2),(4); *see also Morgan*,
        169 F.3d at 603.

28

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, *INTER ALIA*-14-**

1  narrative, Plaintiff had just withdrawn from heroin, and although she

2  was not in a functional state to work at the time of the evaluation,

3  he expected her to improve with medication and counseling.  (Tr. 140).

4  Dr. McRae also reported that objective testing placed her in the

5  moderate range of depression, and that despite her depression, she was

6  able to concentrate and remember information.  (Tr. 139).

7       In support of her findings, the ALJ also pointed out that

8  Plaintiff cared for her grandmother full-time, until April 2001.

9  Plaintiff reported that this involved cooking, shopping, daily

10  household chores and providing companionship to her grandmother.  (Tr.

11  18, 98, 420).  It was reasonable for the ALJ to reject the "marked"

12  and "severe" limitations from this evaluation form in light of its

13  inconsistency with the psychologist's narrative, the lack of

14  supporting documentation, and the record in its entirety.  20 C.F.R. §

15  404.1527(c)(2).

16       The ALJ properly found that Ms. Smiley's and Dr. Rosekrans'

17  evaluations were not supported by documented test results or clinical

18  notes.  (Tr. 22).  Dr. Rosekrans' evaluation is based primarily on

19  Plaintiff's self-report which the ALJ found unreliable, a finding that

20  has not been challenged.  The ALJ further found Dr. Rosekrans' report

21  was not consistent with Ms. Sherman's notes. (Tr. 26).  The ALJ noted

22  that Dr. Rosekrans' observations in September 2001, that Plaintiff was

23  pleasant and cooperative contradicted his conclusion of "marked

24  severity in her ability to interact with the public."  (Tr. 20, 149,

25  153).  She stated there was no evidence of problems in prior work

26  settings, other than theft while Plaintiff was using heroin. (Tr. 22).

27  The ALJ's specific and legitimate reasons are sufficient basis for

28
**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, *INTER ALIA*-15-**

1 | rejection of the opinions at issue.

2 | The record in its entirety supports the ALJ's reliance on Dr.

3 | Bostwick's opinions and her ultimate decision that Plaintiff's

4 | impairments caused mild restrictions in her ability to work.  The ALJ

5 | did not err in her evaluation of the medical evidence.

6 | B.   New Evidence

7 | On October 29, 2003, subsequent to the ALJ hearing and decision,

8 | Plaintiff was evaluated by Dennis Pollack, Ph. D.   (Tr. 378-83).

9 | Plaintiff submitted this evaluation to the Appeals Council.   The

10 | Appeals Council considered the new evidence and found that the

11 | information did not provide a basis for changing the ALJ's decision.

12 | (Tr. 8).  Plaintiff argues Dr. Pollack's findings reflect impairments

13 | more severe than those found by the ALJ.   (Ct. Rec. 14, p. 14).   She

14 | contends this evidence merits a remand to the ALJ for further

15 | proceedings. *Id.*

16 | In this circuit, when the Appeals Council specifically considers

17 | new evidence in the context of denying the claimant's request for

18 | review, the reviewing court considers the rulings of both the ALJ and

19 | the Appeals Council, and the record includes the ALJ's decision as

20 | well as the new evidence.   *Gomez*, 74 F.3d at 971;   *Ramirez v. Shalala*,

21 | 8 F.3d 1449, 1452 (9th Cir. 1993).

22 | Dr. Pollack's evaluation consisted of a review of Plaintiff's

23 | medical reports, including psychological evaluations from Drs. McRae

24 | and Rosekrans.   (Tr. 378).  He administered the WAIS-III, the MMPI-2,

25 | and conducted a personal interview.   *Id.*  Plaintiff reported attending

26 | Spokane Community College since 2000, with a grade point average of

27 | 2.6.   (Tr. 379).  Plaintiff reported she changed medications from

28 |

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT,** *INTER ALIA*-16-

1  Zoloft to Celexa to Effexor.[5]  (Tr. 380).  She reported doing various

2  household chores; however, she stated she did not visit with friends

3  or relatives and was not involved in volunteer work.  (Tr. 381).

4       Dr. Pollack diagnosed her with major depression (recurrent,

5  without psychotic features), opoid dependence in remission, and

6  personality disorder (dependent and antisocial features).  (Tr. 383).

7  He noted the MMPI-2 scores indicates "she may have been exaggerating

8  her difficulties or she was being honest [sic] about her presentation

9  of self," but the scores were "not so high as to invalidate the

10  testing."  (Tr. 382).  Intelligence tests placed her in the average

11  range, and the MMPI-2 profile was that of a "very anxious and

12  depressed" individual.  (Tr. 383).  In his Medical Source Statement

13  (Mental), Dr. Pollack opined Plaintiff had "moderate" limitations [6] in

14  her ability to (1) maintain attention and concentration for extended

15  periods; (2) perform activities within a schedule, maintain regular

16  attendance and be punctual; (3) accept instruction and respond

17  appropriately to supervisors; and (4) get along with co-workers.  He

18  found a "marked" limitation in her ability to complete a normal

19  workday or workweek.  (Tr. 384-85).  He opined Plaintiff had "slight"

20  limitations in her ability to perform at a consistent pace and

21

22

23      [5] According to Nurse Sherman, Plaintiff discontinued anti-
    depressants in mid-October 2002.  She resumed medication treatment in
24  December 2002, and by March 2003, had increased her Zoloft dosage to
    150 mgs.  (Tr. 280, 335).  Plaintiff did not submit new evidence
25  documenting her medication history between March 2003 and October 29,
    2003.

26      [6]  The Medical Source Statement defines "moderate" limitation, as
27  "still able to function satisfactorily," and "marked" limitation, as
    "ability to function severely limited but not precluded."  (Tr. 384).

28
**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT, *INTER ALIA*-**17-

1  interact appropriately with the public.    *Id.*

2      When considering new evidence as a basis for remand, the
3  reviewing court must determine if the evidence is material and there
4  is good cause for the late submission.    42 U.S.C. § 405(g); *see also*
5  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001); *Bruton v.*
6  *Massanari*, 268 F.3d 824, 827 (9th Cir. 1984) (new evidence is material
7  if it "bears directly and substantially on the matter in dispute;" and
8  "there is a reasonable possibility" it would change the outcome of the
9  ALJ's decision).    Based on this standard, the court declines to
10  remand.    The new evidence presented does not differ significantly from
11  evidence in the record before the ALJ.    Further, the opinions are
12  conclusory with no supporting documentation, and are based partially
13  on Plaintiff's subjective allegations of functional limitations which
14  were found not fully credible.

15      In arguing materiality, Plaintiff contends that Dr. Pollack's
16  evaluation establishes her limitations are more severe than those
17  found by the ALJ.    (Ct. Rec. 14, p. 14).    Contrary to Plaintiff's
18  argument, Dr. Pollack found only "slight" limitations in her ability
19  to interact with the public, and "moderate" limitations in her ability
20  to get along with co-workers and accept instruction from supervisors,
21  indicating some improvement. (Tr. 385; *cf.* Tr. 153).    He found a
22  "marked" limitation in her ability to "complete a normal workday or
23  workweek."    (Tr. 384).    However, there is no explanation for this
24  limitation, and the objective testing was inconclusive due to possible
25  exaggeration.    (Tr. 382, 384).    Further, there is no evidence to show
26  that Plaintiff met the durational requirement, or was following
27  through with recommended antidepressant and methadone treatment.    *See*

28
**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT,** *INTER ALIA*-18-

1  *Fair*, 885 F.2d at 603 (failure to follow treatment recommendations

2  negatively impacts credibility).  The new evidence does not establish

3  a reasonable possibility that the opinions therein would change the

4  outcome of the ALJ's determination; therefore, remand is not

5  appropriate.

6  ## VIII.  CONCLUSION

7  The ALJ properly rejected the examining psychologists' opinions

8  that Plaintiff had severe social limitations.  The ALJ's reliance on

9  Dr. Bostwick's testimony was not legal error. His opinions, and the

10  ALJ's ultimate findings, are supported by substantial evidence in the

11  entire record.  The psychological evaluation submitted after the ALJ's

12  decision is conclusory, without supporting documentation, and does not

13  indicate a worsening in Plaintiff's condition.  Consequently, there is

14  no reasonable possibility that it would change the outcome of the

15  ALJ's determination.  Accordingly,

16  **IT IS ORDERED:**

17  1.  Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is

18  **DENIED.**

19  2.  Defendant's Motion for Summary Judgment (**Ct. Rec. 17**) is

20  **GRANTED.**

21  3.  Judgment for the **DEFENDANT** shall be entered. The District

22  Court Executive is directed to enter this Order, forward copies to

23  counsel, and thereafter shall close this file.

24  **DATED** this __5ᵗʰ__ day of October,  2005.

25

26

27  ALAN A. MCDONALD
   SENIOR UNITED STATES DISTRICT JUDGE

28

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT,** *INTER ALIA* **-19-**